UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTERN SURETY COMPANY,
a South Dakota surety company,

        Plaintiff,        CASE NO. 16-CV-11055
                                HONORABLE GEORGE CARAM STEEH
  v.

FUTURENET GROUP, INC., a Michigan
corporation, MOTOR CITY DEVELOPER,
LLC f/k/a FUTURENET DEVELOPER, LLC,
a limited liability company, FUTURENET
SECURITY SOLUTIONS, LLC, a limited
liability company, PARIMAL MEHTA,
individually, DIPIKA MEHTA, individually,
JIGNESH MEHTA, individually, and CAPITAL
FUNDING SOLUTIONS, INC,

        Defendants.
_____/

**ORDER DENYING FUTURENET DEFENDANTS' MOTION (DOC. 35)
TO MODIFY PRELIMINARY INJUNCTION (DOC. 48)**

Plaintiff Western Surety ("Western") filed the instant action against defendants FutureNet Group, Motor City Developer, FutureNet Security Solutions, Parimal Mehta, Dipika Mehta, and Jignesh Mehta (collectively, the "FutureNet Defendants"),[1] alleging that the FutureNet Defendants have defaulted on an indemnity agreement. Pursuant to a motion by Western, the Court issued a preliminary injunction on June 8, 2016. (Doc. 48). The preliminary injunction fully incorporated by reference the terms of a Standstill

---

[1] In addition to the FutureNet Defendants, there is one additional defendant, Capital Funding Solutions. The preliminary injunction now in effect does not restrain Capital, and therefore the Court's resolution of the instant motion will not directly affect Capital. Capital has not filed a brief concerning the instant motion.

-1-

and Negative Pledge Agreement ("Standstill Agreement") that Western and the FutureNet Defendants previously signed. (Doc. 35-2). In short, the preliminary injunction, through its incorporation of the Standstill Agreement, prohibited the FutureNet Defendants from transferring, encumbering, or otherwise disposing of their assets except in limited circumstances.

Now before the Court is the FutureNet Defendants' motion to modify the preliminary injunction. (Doc. 35).[2] The Court ordered supplemental briefing on the motion to modify. (*See* Docs. 49, 50, 52). A hearing was held on July 14, 2016, and the Court took the matter under advisement pending the parties' settlement conference. In their motion, the FutureNet Defendants request that the Court modify the preliminary injunction to allow them to enter into a factoring arrangement (the "Factoring Arrangement") with a company called Money Works Direct ("MWD"). The FutureNet Defendants contend that the Factoring Arrangement would not adversely affect Western in any way, but Western disagrees and opposes the requested modification. For the reasons explained below, the Court will deny the FutureNet Defendants' motion.

**I. Background**

As noted above, the FutureNet Defendants wish to enter into a Factoring Arrangement with MWD, a factoring company. Under the Factoring Arrangement, MWD would pay a $750,000 lump sum to FutureNet Group in exchange for $997,500 of

---

[2] At the time the FutureNet Defendants filed their motion, the Court had not yet issued the preliminary injunction, but the Standstill Agreement was in effect. Thus, their motion to modify was titled "FutureNet Defendants' Motion to Modify Standstill and Negative Pledge Agreement." Given that the Court incorporated the Standstill Agreement into the preliminary injunction, the Court has construed the FutureNet Defendants' motion as a motion to modify the preliminary injunction.

FutureNet Group's receivables. (*See* Money Works Direct Revenue Based Factoring Agreement, Doc. 35-3). The $997,500 in receivables would be transferred to MWD at a rate of $19,182 per week for 52 weeks. (*See id.*). Western has provided a declaration from Charlie Groves, a construction-finance consultant. (Decl. Charlie Groves, Doc. 51-1). He calculates that the Factoring Arrangement would effectively be a loan at a 24.9% interest rate, or "the 'loss' of almost $250,000.00 in revenue." (*Id.* ¶ 6).

When the FutureNet Defendants filed their motion to modify on May 2, 2016,[3] they claimed that they needed the financing provided by the Factoring Arrangement in order to meet their payroll obligations. (*See* Mot. Modify, Doc. 35, at 3). As Western points out, the FutureNet Defendants have not provided any specific evidence about FutureNet Group's payroll obligations and ability to satisfy those obligations. (Pl.'s Resp., Doc. 50, at 10). The FutureNet Defendants' sole evidence on this point is the conclusory testimony of defendant Parimal Mehta, at the preliminary-injunction hearing on May 3, that FutureNet Group was having trouble paying its employees and needed the Factoring Arrangement in order to do so. Moreover, as Western points out, the FutureNet Defendants have apparently managed to pay their employees in the several months that have passed since they filed their motion to modify. (*Id.* at 4-5).

In their reply brief, the FutureNet Defendants acknowledge that they have been able to pay their employees without the Factoring Arrangement, explaining that "FNG has been able to maintain business operations through continued receivable funding with Capital Funding Solution, an unsecured loan in the amount of $250,000 . . . and

---

[3] The motion to modify preceded the Court's issuance of the preliminary injunction. *See supra* note 2.

also by deferring payments to certain IT service vendors." (Defs.' Reply, Doc. 52, at 4). But they claim in their reply that the Factoring Arrangement "would provide bridge financing to secure long term viable financing and to ultimately provide the ability to fund a settlement with Western which would in most likelihood provide for some down payment and some series of payments over time." (*Id.*).  At the July 14 hearing on this motion, the FutureNet Defendants' counsel explained that the Factoring Arrangement would give the FutureNet Defendants a "little more flexibility" and a "little more bargaining room" with their other factoring company, defendant Capital Funding Solutions.  Counsel also stated that notwithstanding their ability to make payroll, the FutureNet Defendants have had considerable financial difficulties, including being unable to pay one of their major software vendors.

A provision of the Standstill Agreement, incorporated into the preliminary injunction, apparently blocks the FutureNet Defendants from entering into the Factoring Arrangement.  This provision prohibits the FutureNet Defendants from "sell[ing], convey[ing], transfer[ring], leas[ing] or dispos[ing] of any of the Collateral outside the ordinary course of business [or] creat[ing], incur[ring], assum[ing] or suffer[ing] to exist any mortgage, pledge, encumbrance, security interest, lien or charge of any kind upon the Collateral other than Permitted Liens." (Standstill Agreement ¶1).  "Collateral" is defined in a separate indemnity agreement between the parties.  (Doc. 1-2).  It includes "all property, rights, and assets of the [FutureNet Defendants], including, but not limited to, all inventory, equipment, instruments, investments, contract rights and proceeds, insurance, accounts, and deposits." (*Id.* ¶ 10).  The Standstill Agreement defines "Permitted Liens" as "[l]iens or encumbrances in favor of . . . any . . . factor as to any

-4-

receivables which are not generated as a result of a construction contract bonded by Western, which liens and encumbrances arise out of the financing of accounts receivable in the ordinary course of business." (Standstill Agreement ¶ 1(a)).  Western has offered evidence that suggests that the Factoring Arrangement would not fall within the Permitted Liens exception.  Specifically, Mr. Groves, Western's expert, states in his declaration that "[u]nder no circumstance can the loss of receivables at a cost of almost 25% be considered a transaction in the ordinary course of business in any type of business." (Decl. Charlie Groves ¶ 10).

The FutureNet Defendants argue that the Court should allow a modification of the preliminary injunction, on the ground that the Factoring Arrangement would not impair Western's interests at all.  The FutureNet Defendants claim that MWD has agreed to sign an addendum. (Doc. 35-3 at 11).  The addendum states, among other things, that MWD "acknowledges that the Assets being purchased pursuant to the [Factoring Arrangement] expressly exclude any Receipt . . . generated as a result of construction contracts bonded by Western Surety Company." (*Id.*).  Moreover, MWD will agree that "its security interest in the [FutureNet Defendants'] Assets is junior and subordinate to all existing the [sic] security interests including without limitation, those of . . . Western Surety Company and its affiliates." (*Id.*).

Based on these provisions in the addendum, the FutureNet Defendants argue that they are simply requesting "permission to grant a lien to the new lender which would be subordinate to the liens of existing secured creditors, including the lien of Western Surety Company . . . , on any assets that might remain after all prior secured creditors, including Western, are paid in full." (Defs.' Reply at 2).  They contend that this

would not affect Western at all because, as things currently stand, if FutureNet Group were to go out of business and be liquidated, Western would receive nothing over and above the receivables from the contracts bonded by Western. (*Id.* at 4 (citing Conway MacKenzie Liquidation Analysis, Ex. 513 from the preliminary-injunction hearing)). Western has a super-priority interest in the receivables from the Western-bonded contracts, but Western's security interest in all of the other assets is subordinate to the security interests of several other secured creditors. (*Id.*). Because of the addendum, the Factoring Arrangement with MWD would only apply to this latter category of assets.

## II. Legal Standard

The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 746 n.4 (6th Cir. 2013) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted). This Court considered four factors in deciding whether to grant the preliminary injunction currently in effect:

> (1) whether the movant [i.e., Western, the plaintiff] has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Mich. Catholic Conference & Catholic Family Servs. v. Burwell*, 807 F.3d 738, 746 (6th Cir. 2015) (quoting *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012)) (internal quotation marks omitted).

"When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place."

Welch v. Brown, No. 12-13808, 2014 WL 2931389, at *2 (E.D. Mich. June 30, 2014) (unpublished) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984)) (internal quotation marks omitted); *accord Toledo Area AFL-CIO Council v. Pizza*, 907 F. Supp. 263, 265 (N.D. Ohio 1995).  The essential question to be answered is whether "changed circumstances require modification so as to effectuate the purposes underlying the initial grant of relief."  *The RightThing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 1954632, at *2 (N.D. Ohio July 6, 2009) (unpublished) (quoting *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1086-87 (N.D. Iowa 2006)) (internal quotation marks omitted).  A court may modify a previously granted preliminary injunction "[w]here 'significant changes in the law or circumstances' threaten to convert a previously proper injunction 'into an "instrument of wrong."'"  *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Salazar v. Buono*, 559 U.S. 700 (2010) (plurality opinion), quoting 11A Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2961 (2d ed. 1996)); *see also LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016) ("Courts . . . may exercise their 'sound judicial discretion' to modify an injunction 'if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.'" (quoting *Sys. Fed'n No. 91, Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961))).

### III. Discussion

As a preliminary matter, the Court finds that the proposed Factoring Arrangement in this case is not "in the ordinary course of business," and that the Factoring Arrangement therefore does not fall within the terms of the Permitted Lien provision in the Standstill Agreement.  This is obvious from the high effective interest rate of the

proposed Factoring Arrangement, and confirmed by the credible declaration by Mr. Groves, Western's expert. Even the FutureNet Defendants' counsel admitted during the hearing that factoring is a financing source "of last resort." Thus, for the FutureNet Defendants to enter into the Factoring Arrangement, the Court would need to order a modification of the preliminary injunction.

The Court will not order a modification. The FutureNet Defendants have not shown that circumstances have changed significantly since the Court entered the preliminary injunction in this case or since the parties entered into the Standstill Agreement.[4] FutureNet Group has been able to pay its employees, and the FutureNet Defendants no longer claim that collapse is imminent. Moreover, the FutureNet Defendants have adduced no evidence, other than the conclusory testimony of Parimal Mehta, that their financial circumstances have changed or that they need the proposed Factoring Arrangement. The FutureNet Parties' desire for more financial "flexibility" is an insufficient change in circumstance.

Furthermore, the FutureNet Defendants have not shown that the preliminary injunction is "an instrument of wrong" or that a modification would be required to effectuate the purposes of the preliminary injunction. Whatever financial hardship the FutureNet Defendants will suffer due to the Court's refusal to modify the preliminary injunction is not significant enough to affect the Court's previous analysis under the

---

[4] It is not entirely clear whether the Court should consider the changed circumstances from the date of the signing of the Standstill Agreement or from the date of the entry of the preliminary injunction. At any rate, the outcome is the same either way.

harm-to-others and public-interest factors of the preliminary-injunction test.  (*See* Op. & Order Granting in Part & Denying in Part Pl's Mot. Prelim. Inj., Doc. 48, at 19-23).

On the contrary, the requested *modification* would harm *Western*.  When the Court ruled on Western's preliminary-injunction motion, the Court carefully balanced the four preliminary-injunction factors and ultimately granted Western a very limited form of injunctive relief:  a stay on the transferring or encumbering of assets except in the ordinary course of business.  The Court did so even though the evidence in the record makes very clear that Western has a high likelihood of success on the merits and will likely lose millions of dollars no matter what the Court does.  To now allow the FutureNet Defendants' requested modification would undermine the very limited relief that the Court has afforded Western.  The requested modification would reduce the—admittedly low—probability that Western will recover anything beyond the receivables from the Western-bonded contracts.

## IV. Conclusion

Therefore, the Court finds that it would be inappropriate to modify the preliminary injunction.  The FutureNet Defendants' motion to modify (Doc. 35) is DENIED.  IT IS ORDERED that the FutureNet Defendants' SHALL NOT enter the proposed Factoring Arrangement with MWD.

IT IS SO ORDERED.

Dated:  January 19, 2017

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

-10-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 19, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

2:16-cv-11055-GCS-SDD Doc # 59 Filed 01/19/17 Pg 10 of 10 Pg ID 907